# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 693 | **DATE** | 9/20/2001 |
| **CASE TITLE** | Toney vs. Rosewood Care Center, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Court grants HSM's motion for summary judgment; HSM is entitled to judgment as a matter of law on Counts 1,3 and 4 of the second amended complaint. Additionally, the Court grants judgment as a matter of law in favor of RCC and Mendelson on Count 4. RCC's motion for summary judgment is otherwise denied. Defendant's motion for leave to file a response to plaintiffs' statement of undisputed facts is denied as untimely. Status hearing set to 10/18/01 at 9:30 a.m. for the purpose of setting a trial date. Trial counsel are directed to be present.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 2 4 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 152 |
| | Copy to judge/magistrate judge. | FOR DOCKETING 01 SEP 23 AM 10: 18 | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DONNA TONEY, et al.,           )
                               )
        Plaintiffs,            )
                               )
vs.                            )   Case No. 98 C 693
                               )
ROSEWOOD CARE CENTER, INC.,    )
of Joliet, HSM MANAGEMENT, INC.)
and PHIL MENDELSON,            )
                               )
        Defendants.            )
                               )

**DOCKETED**
**SEP 24 2001**

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The named plaintiffs in this race discrimination class action, Donna Toney, Meridith[1] Beene, Mary O'Neil, Clara Mae Young and Elizabeth Shelby, all African-American, worked for Rosewood Care Center, Inc. of Joliet, a nursing home in Joliet, Illinois. Some (or maybe all) of RCC's administrative personnel, including Phil Mendelson, RCC's former senior administrator and one of the alleged harassers in this case, came to RCC through HSM Management Services, Inc., a company that provides administrative personnel to healthcare facilities. HSM and RCC are both owned by Rosewood Care Center Holding Company, and the same man, Larry Vander Maten, is the president of both RCC, HSM, as well as the holding company.

### The Plaintiffs' Allegations

The named plaintiffs all filed race discrimination charges with the EEOC and received

---

[1] Ms. Beene's name is spelled in different ways in different documents and sometimes in different ways within the same document. We have adopted the spelling from the Second Amended Complaint.



right-to-sue letters; in fact, all but one of them filed two charges with the EEOC and received two right-to-sue letters. Because it is important to our discussion below, we detail the specific allegations of each named plaintiff.

Donna Toney filed her first charge in December 1997 claiming that RCC, the only respondent named, suspended her on July 18, 1997 and then fired her on July 22, 1997 because of her race and not, as RCC claimed, because she abused a patient. The second charge, filed July 6, 1998, was identical in substance to the first charge except that it added Mendelson and HSM as respondents. The Second Amended Complaint also alleges that Toney was fired because of her race and not because she abused a patient. But the complaint does not mention the suspension; instead it alleges various incidents in June and July 1997 in which Mendelson exhibited racial animus. Specifically, the complaint alleges that Mendelson told Toney: that another RCC employee had told him not to hire Toney because of her race; that because of her race she should know who stole a resident's television; that "black and white [employees] can't get along" and that "Dr. Martin Luther King, Jr., had 'failed.'"

Meridith Beene filed her first charge on February 17, 1998 against RCC and Mendelson alleging that from at least April 1997 RCC's "administration engaged in a continuing course of discrimination against [her] and other African-American employees . . . creating an abusive and offensive work environment." As evidence of this environment, Beene claimed that Mendelson: told her he liked one African-American employee because he was an "Uncle Tom"; referred to African-Americans as "you folk" and "you people" and asked her why black people need to go to jail before they know how to act; failed to discipline an employee who called Beene a "stupid nigger"; drew a line on a piece of paper, labeled one end "KKK" and the other "Panthers" and

2

then asked Beene where she fell "on the scale" and showed her where he thought other employees fell; and told Beene he "knew a black girl and a white girl couldn't be friends." Beene also alleged that after she complained about the hostile environment, RCC retaliated against her by assigning her extra work, made derogatory comments about her performance and disciplined her for failing to sign out when she left the building for lunch. Beene resigned on September 15, 1997, allegedly because of the intolerable atmosphere at RCC; RCC replaced her with a white employee. On July 6, 1998, she filed a second charge with the EEOC adding Mendelson and HSM as respondents; the charge was otherwise substantively the same as the first charge.

Mary O'Neil filed her first charge on February 17, 1998 against RCC and Mendelson. In it she claimed that she was fired on November 24, 1997 because of her race and not, as RCC claimed, because she slapped a patient – indeed, she denies that she slapped a patient. On July 6, 1998 she filed a second charge adding HSM as a respondent; her second charge was otherwise substantively the same as her first charge.

Clara Mae Young filed a charge on February 17, 1998 against RCC claiming that from at least April 1997 RCC's "administration engaged in a continuing course of discrimination against [her] and other African-American employees . . . creating an abusive and offensive work environment." Specifically, Young claimed that she and other African-American employees were not allowed to eat in the resident dining area, while non-African-American employees were; that African-American employees were disciplined for violating RCC's "calling off" policy, while non-African-American employees were not; and that RCC failed to investigate the theft of her locker. Finally, she claimed that RCC fired her on December 22, 1997 because of her race

and not, as RCC claimed, because she had "called off" from her previously-scheduled shift. Young never filed a second charge.

Elizabeth Shelby filed her first charge against RCC and Mendelson on May 21, 1998 alleging that from at least April 1997 RCC's "administration engaged in a continuing course of discrimination against [her] and other African-American employees . . . creating an abusive and offensive work environment." Shelby claimed that in June and July 1997 she was given extra assignments that were not part of her job description, while non-African-American employees were not; she was disciplined for violating RCC's policy requiring employees to sign out when leaving for lunch, while non-African-American employees were not; and that she was disciplined for wearing multiple earrings, while non-African-American employees were not. She also claimed that RCC retaliated against her after she complained by giving her an unfairly low performance appraisal. Finally, she claimed that RCC posted a vacancy notice for a job stating that only registered nurses would be considered and then hired a non-African-American non-RN employee to fill the vacancy. Shelby resigned in May 1998 because, she claims, of the hostile work environment. On July 6, 1998, Shelby filed a second charge adding HSM as a respondent; the allegations in her second charge were otherwise substantively the same as those in her first charge.

The allegations in the Second Amended Complaint relating to all of the named plaintiffs except Toney track the allegations in their individual EEOC charges; as explained, the complaint deviates from Toney's EEOC charges quite a bit, though the additional allegations in the complaint would certainly be covered by the umbrella allegation in her EEOC charges that RCC fired her because of her race. The complaint also alleges that there existed at RCC a general

4

pattern of discrimination: RCC allowed non-African-American employees to take their allotted two weeks of vacation but consistently refused, purportedly because of scheduling problems, to allow African-American employees to do so; RCC disciplined African-American employees for violating the company's "calling off" policy but did not discipline non-African-American employees who did so; Mendelson color coded employees' personnel files with stickers indicating each employee's race; and RCC intentionally and maliciously reduced the number of African-Americans in its work force by selectively enforcing its personnel policies.

Both HSM and RCC have moved for summary judgment, which is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). We consider each motion in turn.

### HSM's Motion for Summary Judgment

HSM seeks summary judgment on the plaintiffs' Title VII claims (Counts 1 and 3) and the plaintiffs' intentional infliction of emotional distress claim (Count 4). HSM argues that it is entitled to summary judgment on plaintiffs' Title VII claims because the plaintiffs failed to exhaust their administrative remedies. HSM was not a party to this lawsuit until July 9, 1998, when the plaintiffs filed their Second Amended Complaint adding HSM as a defendant. Nor was HSM named in any of the initial EEOC charges. But HSM was named as a respondent eventually by all but one of the named plaintiffs (Clara Mae Young) and these plaintiffs all received a right-to-sue letter based on those charges. Thus to the extent the second amended complaint was subject to dismissal when filed for failure to exhaust, that deficiency was cured

5

when the plaintiffs received the right-to-sue letters on their amended charges. *See Perkins v. Silverstein*, 939 F.2d 463, 471 (7th Cir. 1991). But we still must consider whether Young, who never added HSM to her charge, can piggyback on the other plaintiffs' properly-filed claims. The short answer is yes.

Under the "single-filing" rule, which applies to class actions as well as individual suits, *see Romasanta v. United Airlines, Inc.*, 537 F.2d 915, 918-19 & n.7 (7th Cir. 1976), a plaintiff who has neither filed a timely charge with the EEOC nor received a right-to-sue letter – both of which are conditions precedent to seeking judicial relief, *see Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1245 (7th Cir. 1983); 42 U.S.C. §2000e-5(e), (f)(1) – may nonetheless, under certain circumstances, join a suit initiated by a plaintiff who has satisfied these requirements. *Zuckerstein v. Argonne National Laboratory*, 663 F. Supp. 569, 572 (N.D. Ill. 1987); *Robinson v. Sheriff of Cook County*, No. 95 C 2205, 1996 WL 417559, at *1 (N.D. Ill. July 22, 1996). The theory behind the rule is that the policies served by the EEOC charge and right-to-sue letter requirements – to give the employer notice of the grievance and to give both the employer and the EEOC an opportunity to settle disputes short of litigation – may be accomplished without requiring each person with the same grievance to file a charge. *See Zuckerstein*, 663 F. Supp. at 572 (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982)); *Robsinson*, 1996 WL 417559, at *1 (citing *Griffin v. Dugger*, 823 F.2d 1476, 1492 (11th Cir. 1987)). The rule has two requirements: "[f]irst, at least one plaintiff must have timely filed an EEOC complaint that is not otherwise defective" and "[s]econd, the individual claims of the filing and non-filing plaintiffs must have arisen out of similar discriminatory treatment in the same time frame." *Griffin*, 823 F.2d at 1492 (quoting

6

*Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1011-12 (11th Cir. 1982)). There appears to be no dispute on the first requirement in this case, and the record shows that Toney, Beene, O'Neil and Shelby each filed a timely, proper charge against HSM. Our focus is on the second requirement, which, sadly, the parties have not addressed. We nevertheless find that Young's initial charge satisfied this element as well: she alleged that during the period from April 1997 to December 1997, Mendelson and the rest of RCC's administrative staff selectively enforced certain policies (in Young's case, the "calling off" policy and the policy that barred workers from eating or doing paperwork in the resident dining area) against African-American employees and failed to investigate their complaints and concerns with the same rigor it employed in investigating those expressed by non-African-American employees. These claims allege discriminatory treatment in the same time frame as the other plaintiffs (generally, summer/fall of 1997) and in the same manner; Elizabeth Shelby similarly alleged that RCC, Mendelson and HSM selectively enforced personnel and administrative policies, and Meridith Beene similarly alleged that these respondents failed to investigate her complaint that another employee called her a "stupid nigger." Young's allegations are part of the same general discriminatory philosophy that is alleged to have permeated RCC and caused the administration to treat African-American employees with less respect, less tolerance and more animosity than their non-African-American colleagues. Her claims are therefore permissible under the single-filing rule.

Before resolving once and for all HSM's argument that the plaintiffs' charges were insufficient to satisfy the judicial conditions precedent, we also need to consider whether the way in which the plaintiffs proceeded before the EEOC satisfied the notice and conciliation policies with respect to HSM. The plaintiffs ultimately added HSM as a respondent on their charges. But

they did not do so until *after* they filed the Second Amended Complaint, which would suggest that HSM had no notice and no opportunity to attempt to resolve the grievances short of litigation. We therefore have to ask whether the initial charges, which named only RCC and Mendelson, satisfied these concerns. Contrary to HSM's argument on this issue, we think that the initial charges, which all specifically accused Mendelson of discrimination in one form or another, would have been enough to bring HSM into the conciliation fray; HSM hired and supervised the main harasser, it apparently drafted or prepared the employee manual RCC used to govern its employees' conduct, and the same man, Vander Maten, ran both HSM and RCC, as well as their parent company. Accordingly, the Court declines to dismiss the plaintiffs' Title VII claims on this ground. In light of this ruling we need spend no more time on the plaintiffs' "single employer" and "identity of interest" arguments, which appear to address the question of notice and the propriety of the EEOC charges rather than liability.

HSM also argues that it cannot be liable to the plaintiffs under Title VII because it did not employ the plaintiffs. The wrinkle in this case is that the plaintiffs were employed by RCC, but the person alleged to have been primarily responsible for creating the hostile environment at RCC was technically employed by HSM. In light of these circumstances, HSM is right. "The simple fact that the plaintiffs were not employees, that they could not demonstrate the existence of an employment relationship, render[s] them without the ambit of Title VII protection and preclude[s] them from bringing discrimination actions alleging violations of the Act." *Alexander v. Rush North Shore Medical Center*, 101 F.3d 487, 492 (7th Cir. 1996). At first blush this seems unfair, and it is tempting to say that the plaintiffs should not be punished because the parent company of both RCC and HSM chose to structure its operations and divide its labor

8

resources in this manner. But as it turns out, saying that HSM is not liable to the plaintiffs will not punish them; they would suffer only if the law prevented them from holding someone else responsible for Mendelson's conduct, and it does not. If the plaintiffs can demonstrate that Mendelson created an actionable hostile environment, RCC, their true employer, may be liable for any harm they suffered because of that environment even though it did not technically employ Mendelson. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 777 (1998) ("An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee."); *Menchaca v. Rose Records, Inc.*, No. 94 C 1376, 1995 WL 151847, at *3 (N.D. Ill. April 3, 1995) ("a harasser's status as a non-employee does not as a matter of law shield the employer from liability under Title VII, if the employer knew or should have known of the harassment."). In any event, the Court could find no case, and the plaintiffs cited no case, in which a court held an employer liable under Title VII for harm suffered by non-employees because of discriminatory acts of an employee. The Court finds that HSM is entitled to summary judgment on Counts 1 and 3.

HSM also seeks summary judgment on the plaintiffs' intentional infliction of emotional distress claim on the ground that the discriminatory conduct, as alleged by the plaintiffs and developed in the record, was neither extreme nor outrageous. The plaintiffs offered no response to this argument. In fact, they made *no* effort to prop up their emotional distress claim, making it difficult if not impossible for the Court to find that a reasonable trier of fact could rule in their favor. The Court therefore finds that the plaintiffs have effectively waived this claim and that HSM is entitled to summary judgment on Count 4. *See, e.g., Ostergren v. Village of Oak Lawn,*

9

125 F. Supp. 2d 312, 323 (N.D. Ill. 2000) (plaintiffs who fail to properly address a claim in response to a motion for summary judgment waive the claim). For the same reason, RCC and Mendelson would also be entitled to judgment as a matter of law on Count 4. *See Acequia, Inc. v. Prudential Insurance Company of America*, 226 F.3d 798, 807 (7th Cir. 2000) ("where one defendant succeeds in winning summary judgment on a ground common to several defendants, the district court may also grant judgment to the non-moving defendants, if the plaintiff had an adequate opportunity to argue in opposition.") (citing *Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986)).

### RCC's Motion for Summary Judgment

RCC seeks summary judgment on Counts 1, 2, and 3 of the plaintiffs' Second Amended Complaint both as to the individual allegations of each named plaintiff and as to the general pattern of discrimination allegations. In its motion, RCC goes bit by bit through the named plaintiffs' allegations and attempts to undermine the veracity of each by pitting the plaintiffs' word against that of other RCC employees and by pointing out inconsistencies and holes in the plaintiffs' deposition testimony. But the Court cannot resolve such conflicts on summary judgment. *See Stewart v. RCA Corp.*, 790 F.2d 624, 628 (7th Cir. 1986) (a judge "may not assess the credibility of witnesses to decide a motion for summary judgment"); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE §2726 (3d ed. 1998) (even if a plaintiff's story seems to the court to be fantastic, summary judgment is improper because only a jury should determine the plaintiff's credibility). Moreover, in deciding whether the plaintiffs have alleged facts sufficient to get to a jury, we do not pick apart the claims to ask whether each allegation could separately support a discrimination claim; instead, we look

to the allegations as a whole and ask whether based on those allegations a reasonable trier of fact could find that the defendant discriminated against the plaintiffs because of their race.

RCC also argues that many of the allegedly discriminatory remarks and actions the plaintiffs say occurred, when viewed in context, cannot be discriminatory. For example, with respect to Clara Mae Young's allegation that RCC discriminated against African-American employees by not letting them eat in the residents dining room, RCC argues that "CNAs, because they provide care to residents, have an obvious need to be in the resident dining room, while cooks do not." Memorandum in Support of Motion for Summary Judgment, p. 11. It is certainly possible that a jury will agree with RCC that the allegedly discriminatory remarks and actions were utterly innocuous; but it is equally plausible that a jury will agree with the plaintiffs on this issue, and summary judgment is therefore inappropriate.

RCC also argues that it is entitled to judgment on Mary O'Neil's and Donna Toney's claims because RCC fired them, not as alleged because of their race, but for a legitimate, nondiscriminatory reason–namely because they violated RCC's "zero tolerance" policy on resident abuse and neglect. Indeed, RCC argues, the Illinois Department of Public Health independently concluded that O'Neil had abused a resident, which means that O'Neil cannot prove her claim. But, as the plaintiffs correctly argue, the complaint may be construed to allege not that RCC's stated reason for firing O'Neil and Toney was false–though both deny that they abused or neglected patients–but that RCC selectively enforced its policy against African-American employees. And the plaintiffs offered evidence that in at least one instance a non-African-American employee who violated the policy received only a verbal warning. *See* Plaintiffs' Exhibit I, p. HSM-00732. This evidence is enough to get the plaintiffs to a jury on

11

these claims.

Finally, RCC argues that it is entitled to summary judgment on any class claims concerning conduct that occurred outside the time frame covered by the named plaintiffs' EEOC charges (April 1997 to May 1998) and conduct by anyone other than Mendelson. To the extent the class members' claims are predicated on one of the named plaintiff's EEOC charges, the Court agrees that the relevant time frame for those claims would be limited to the period in those charges. To take advantage of the "single filing" rule, the individual claims of the filing and non-filing plaintiffs must have arisen out of similar discriminatory treatment *in the same time frame.*" *Griffin*, 823 F.2d at 1492 (quoting *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1011-12 (11th Cir. 1982)) (emphasis added). But that rule applies only if the class member did not file his or her own charge with the EEOC. If an unnamed class member filed an EEOC charge alleging discrimination at some point before or after the dates alleged by the named plaintiffs, the single filing rule would not apply, and the Court would have no reason to limit the scope of that plaintiff's claim. Moreover, the Court disagrees with RCC that the claims are necessarily limited to conduct by Mendelson. As we said in ruling on the motion to decertify, "as the complaint makes clear, plaintiffs are alleging an institutional pattern and practice of discrimination, not just discrimination suffered at Mendelson's hands." *Toney v. Rosewood Care Center*, No. 98 C 693, 2001 WL 322413, at *2 (March 13, 2001). The same is true of the EEOC allegations, which mention but do not limit themselves to conduct by Mendelson.

## Conclusion

For the reasons explained below, the Court grants HSM's motion for summary judgment [docket number 137]; HSM is entitled to judgment as a matter of law on Counts 1, 3 and 4 of the Second Amended Complaint. Additionally, the Court grants judgment as a matter of law in favor of RCC and Mendelson on Count 4. RCC's motion for summary judgment [docket number 136] is otherwise denied. Defendant's motion for leave to file a response to plaintiffs' statement of undisputed facts is denied as untimely. The case is set for a status hearing on October 18, 2001 at 9:30 a.m. for the purpose of setting a trial date. Trial counsel are directed to be present.

Dated: September 20, 2001

*(signature)*
MATTHEW F. KENNELLY
United States District Judge